## WEIS BROS. v. E. AHRENBECK.

### No. 463.

1. **Pleading—Fraud—Dealings with Lunatic.**—Suit by plaintiffs upon a sworn account for merchandise sold and delivered. Defense by guardian of the defendant, who had been adjudged a lunatic subsequent to the purchase. The guardian by cross-action alleged, that the purchaser was insane when he bought the goods, and this the plaintiffs knew at the time; that he was induced to purchase by false representations made by the plaintiffs that they would deliver to him goods in sound, merchantable condition and at reasonable market value; that the goods were old, shelf-worn, unmarketable, and of inferior quality, and worth only one-fourth the amount charged therefor; that in his insane condition he was unable to realize the facts, and while insane had paid to plaintiffs an amount largely in excess of the value of the goods; asking recovery for the sum paid in excess of the payment over the reasonable value. *Held*, that this showed meritorious ground of cross-action. From such facts an obligation would arise for repayment of such excess.

2. **Sworn Account — Controverting Affidavit.**— In an action upon a sworn account against an insane defendant, the guardian answering is not required to file counter-affidavit as basis for attacking the items in the account, or their alleged value.

3. **Measure of Damages.** — The measure of damages in such case is the excess of the money paid over the value of the goods delivered.

APPEAL from Hays.    Tried below before Hon. H. TEICHMUELLER.

*O. T. Brown*, for appellants.—1.  The court erred in overruling plaintiffs' demurrer to defendant's answer or cross-bill, because said answer or cross-bill shows no cause of action against plaintiffs, neither upon an express nor implied assumpsit.    Story on Sales, secs. 448–458b; 5 Laws. Rights and Rem., sec. 2479.

2.  No counter-affidavit whatever was filed at any time denying the justice of said account, nor otherwise meeting nor attempting to meet the provisions of the statute; but defendant simply filed this answer and cross-bill, which is not in any respect verified by affidavit.    Sayles' Civ. Stats., arts. 2266, 1265, subdivs. 10, 11.

*Owen Ford* and *Hutchison & Franklin*, for appellee.—If the allegations set out in defendant's answer, to the effect that he was insane when the goods, etc., were sold him by plaintiffs, are true, then plaintiffs could not recover on any contract had with defendant, for the latter was incapable of contracting.  Plaintiffs had therefore no cause of action on the contract, and if entitled to recover at all, they could only recover the reasonable value of the goods delivered to defendant.  If defendant, whilst insane, paid to plaintiffs more than the reasonable value of the goods, he was entitled to recover of plaintiffs the amount so overpaid.  The statute does not contemplate that an answer setting up such a defense should be sworn to.  To knowingly induce an insane person to buy inferior goods at an exorbitant price is a fraud, and the perpetrator is in no position to demand any consideration from a court of equity.  Ins. Co. v. Blockenship, 94 Ind., 535; College v. Wilkinson, 6 West. Rep., 585; Crawford v. Scovall, 94 Pa. St., 48; Brigham v. Fayerweather, 3 N. E. Rep., 759; Chitty on Con., 131–134; Bish. on Con., sec. 964, et seq.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought in the County Court of Hays County by appellants, Weis Bros., merchants in Galveston, Texas, May 29, 1889, against appellee, E. Ahrenbeck, for $484.60, balance due upon sworn account for goods sold in August, September, and October, 1888.

Ahrenbeck answered, and afterwards, December 9, 1889, was adjudged a lunatic.  B. G. Neighbors was appointed guardian of his estate, and was made party defendant August 6, 1890.  The case was transferred to the District Court, the county judge having been of counsel for defendant.  Neighbors filed an amended original answer, general denial, and special answer alleging, that when the goods were sold to Ahrenbeck he was insane and had not the legal mental capacity to contract, as was well known to plaintiffs; that he was induced to purchase the goods by false

and fraudulent representations made by plaintiffs, upon which he relied, that they would deliver to him the goods in sound, merchantable condition, and that they would charge him therefor their reasonable market value; that when the goods were delivered to him they were not in good, sound, merchantable condition, but were old, shelf-worn, unmarketable, and inferior in quality, and were worth only one-fourth of the amount charged therefor; that in his insane condition he was unable to realize the facts; that while he was so insane, he paid plaintiffs for the goods the sum of $1975, admitted by them as credits on their accounts, being $1369.90 in excess of the reasonable value of the goods sold. Defendant asked judgment against plaintiffs for the amount so paid in excess of the value of the goods.

Plaintiffs filed a denial of the answer, and special exceptions to the same, which were overruled.

Verdict and judgment were rendered for defendant for $376.30 on September 14, 1891, from which plaintiffs have appealed.

The objections to the answer of defendant made by special exceptions in the court below and urged in this court by assignments of error are:

1. That "the averments therein of fraudulent representations are vague and uncertain, and relate to matters and things to be done in the future."

2. "There is no assumpsit, either express or implied, shown by the allegations in said answer upon which any action ex contractu or ex delicto could legally arise, and there are no allegations in said answer contained upon which any action ex delictu or sounding in tort could legally be maintained."

*Opinion.*—We are not able to see why the allegations are too vague or uncertain. They set up distinct and material facts pertinent to the case, which, if true, would constitute a good defense and a meritorious cross-action.

In a suit on their account plaintiffs could only recover the reasonable value of the goods sold to Ahrenbeck. He did not occupy a worse position than an ordinary purchaser, who would only be liable for the reasonable value of the goods.

The alleged promise of plaintiffs to sell him the goods at their fair and reasonable value did not add to their obligations. This would be their duty to every customer buying on account, and they could recover no more, unless there was a special contract. All the items of all the accounts were in issue by plaintiffs' own pleadings, and upon their justice depended the truth and justice of the balance sued for. The burden was upon them to establish their claim as being a correct balance due for all the goods sold, after deducting the $1975 credited as payments thereon.

This being true, do the averments of the answer show an obligation on

the part of plaintiffs to return the amount overpaid them on the goods? It is shown by the answer that the goods were sold to the lunatic on account, and the prices charged therefor were greatly in excess of their value, plaintiffs knowing his condition; and that while he was still insane and unable to appreciate the facts, he paid them on the goods much more than their value. Could it be said that there would, in such case, be no obligation on their part to return the amount overpaid? The obligation is implied, and its enforcement needs no express promise to pay. The fact that he was insane and legally incapacitated to contract and to understand his rights, is the fact that invalidates the payment as such—as a contract of settlement. Equity would protect him, and require plaintiffs to refund the amount paid in excess of the amount due.

Appellants insist on another exception to the answer; that plaintiff's accounts were verified by affidavit according to the statute, and could not be disputed or denied except by counter-affidavit specifying the contested items.

This contention can not be sustained. Defendant was insane; he purchased the goods while in that condition; he was insane when his answer was filed by his guardian. He himself could not make the counter-affidavit. The court should not permit him to do so. The guardian, succeeding him as defendant in the suit about two years after the accounts sued on were made, and after many of the goods have certainly been sold in the course of trade, is not in a position to swear to the facts. The statute, in our opinion, should not be made to apply to sales of goods to persons non compos mentis, persons incapable of making the account mentioned in the statute. We think it was intended to apply to accounts made and contracted between persons who have the legal or mental capacity to contract. However this may be, under the circumstances of this case the counter-affidavit could not be required of the guardian in order to authorize the proof of the defense and cross-action set up.

Appellants insist that the court erred in refusing their requested charge, to the effect, that if the finding should be for the defendant, the measure of damages would be the difference between the amount paid on the goods, $1975, and the amount actually realized from the sales thereof by Ahrenbeck and his guardian, and if the evidence does not show the amount actually realized by Ahrenbeck and his guardian from such sales, the jury could not find any amount whatever for defendant.

This charge was not the law of the case. The proof showed that Ahrenbeck received the goods as alleged, and put them on sale in his store in San Marcos, and continued to sell from them until his arrest for lunacy, pending the suit; and that when Neighbors was appointed guardian of his estate, he took possession of them, proceeded to sell and did sell them. The evidence did not show what was realized from the sales. The charge

of the court gives the correct measure of damages—the amount found to have been paid to plaintiffs in excess of the value of the goods.

Plaintiffs sued for and were only entitled to their reasonable value, and were not entitled to recover more. Under the circumstances of the imposition upon Ahrenbeck, and his payment while insane and not responsible for his acts, he or his guardian could recover the amount paid over the value. An entire rescission could not be had after the guardian was appointed, and hence the adjustment required by the court's charge was at least all plaintiffs could demand.

Defendant's cross-action was not for damages for a tort or for a breach of a contract, where he would be compelled to use care to lessen the damages or relieve himself of the consequences of plaintiffs' wrong. It was simply for an amount overpaid them by their fault, under circumstances that would require them to refund it to him. Defendant waived any damages he might have for the wrong done or the fraud practiced, if he had any. In such case, the amount overpaid would be the amount due, as in case of money had and received. Laws. on Rights and Rem., sec. 2553.

This view of the case also disposes of appellants' fifth assignment of error.

We think there was evidence showing that Ahrenbeck was insane at the time he purchased the goods and at the time he made the payments; and there was no error in refusing a new trial because of the insufficiency of the proof. There was testimony to the effect that the goods sold him were not worth more than one-fourth the amount charged therefor.

Defendant Ahrenbeck was twice adjudged a lunatic. In 1853, while he resided in Grimes County, he was insane, and was so adjudged and sent to the Lunatic Asylum at Austin, and had a guardian appointed to attend to his business up to sometime in 1885; how long he remained in the asylum does not appear, but he was found at large in Hays County in 1887, and built a house in San Marcos and opened a mercantile business, and he was again adjudged a lunatic pending this suit.

We can not say but that the verdict was correct in finding that he was crazy (so much so, at least, as to be incapacitated to transact business) at the time of his purchase of the goods and of payment, and to the time he was again tried and convicted of lunacy after this suit was brought. The court submitted the question to the jury, and upon testimony which we think sufficient they returned a verdict to that effect. In this, and upon the issue that he overpaid the value of the goods to the amount found in his favor, the verdict was sustained by the testimony.

We find no error in the judgment, and conclude that it should be affirmed, and it is so ordered.

*Affirmed.*

Delivered December 20, 1893.